UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PRIME CHOICE SERVICES, INC.,

        Plaintiff,

    v.                             Case No. 13-C-1435

SCHNEIDER LOGISTICS TRANSLOADING
AND DISTRIBUTION, INC.,

        Defendant.

## DECISION AND ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This is an action for breach of contract that arises under the court's diversity jurisdiction. See 28 U.S.C. § 1332. Plaintiff Prime Choice Services, Inc., is a North Carolina corporation with its principal place of business in Catawba County, North Carolina. Prime Choice is engaged in the business of providing container unloading, sorting, packaging and reloading services. Defendant Schneider Logistics Transloading and Distribution, Inc., is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin. Schneider, among other things, operates warehouses and transloading facilities where shipments are transferred from one method of transportation to another.

Effective May 1, 2013, Prime Choice entered into a written contract with Schneider under which Prime Choice was to supply the labor needed to unload shipments of retail merchandise from containers taken off of inbound ships at Schneider's facility in Savannah, Georgia and reload the merchandise into truck trailers for transportation to retail merchants throughout the country. Under the terms of the Services Contract, Prime Choice was to "deploy such personnel as may be required by it to provide the Services in a timely fashion as reasonably required by [Schneider]" at its facility

known as Building 248. Schneider agreed to pay all valid undisputed invoices submitted by Prime Choice within thirty days of invoice. The contract contained the following provision governing termination:

> In the event that either party defaults in the performance of any of its duties or obligations under this Contract, which default is not cured within five (5) days after written notice thereof is given to the defaulting party by the non-defaulting party specifying the default, then the non-defaulting party may terminate this Contract upon written notice.

The relationship between the parties was difficult from the start. There were early disagreements regarding the quality of PCS's performance; the amount of work that was promised by Schneider versus the actual work required; the amount PCS was charging; whether PCS was in violation of labor laws; and lack of communication between the parties. These troubles were compounded by PCS's difficulties with morale, recruiting, and their inability to turn a profit. At one point the parties agreed to a five-week increase in rates to ameliorate PCS's problems. By August 2013, the parties had begun exchanging emails with lists of complaints about each other. At this point, Schneider had yet to make a single on-time payment to PCS.

On August 27, 2013, PCS President Howard Huffman sent a letter to Schneider's Vice President and General manager about unpaid invoices. This correspondence was part of a series of communications between the parties describing allegations of contract violations. However, it was the first written correspondence to include an allegation of failure to pay on time. Specifically, the letter stated:

> Schneider is now in breach of the Contract by failure to pay. The terms clearly call for all invoices to be paid within 30 days. Currently, $82,464.42 is over 30 days past due. $12,177.16 is over 60 days past due. Based on your prior breach of the Contract and your most recent letter denying any responsibility, it is clear you do not have the intent to continue to pay for the services which Prime Choice is providing.

2

If I am incorrect, please contact me immediately and verify that you will pay all outstanding invoices immediately. Based on the current situation, I can only assume you do not intend to pay, and Prime Choice will be left with no other option but to pull its employees from the location.

Daniel Flaherty of Schneider replied via email and mail three days later on Friday, August 30, 2013. In his correspondence, Mr. Flaherty stated that "[a]s to billings, all undisputed billings are being remitted today." Mr. Flaherty went on to write that Schneider had modified their procedures to assure timely future payments.

Notwithstanding Flaherty's assurance that the undisputed invoices were to be paid forthwith, PCS failed to wait the five days required under the contract and walked off the job the following day. When Schneider then refused to pay the invoices that had already been submitted, PCS commenced this lawsuit for breach of contract. Schneider filed a counterclaim in which it alleges that PCS breached the contract by walking off the job without giving Schneider the full five-day opportunity to cure the alleged default. Schneider claims it incurred substantial damages as a result of PCS's wrongful termination. Schneider claims that it had to pay premium rates to third party providers for the labor needed to complete the work that PCS left unfinished.

This case was originally filed in a North Carolina state court. It was subsequently removed to federal court in the Western District of North Carolina. Finally, the case was transferred to this Court pursuant to a contractual forum selection clause. PCS now moves for summary judgment, claiming that it is undisputed that Schneider owed it $286,918.94 at the time it pulled its personnel from the job site. In response Schneider claims that PCS owes it $853,401.49 in damages it incurred in replacing PCS workers with workers from third-party service providers after PCS workers walked off the job. Schneider opposes PCS's motion for summary judgment on the ground that it is entitled

3

to offset any amount it may owe PCS with damages it incurred as a result of PCS wrongful termination of the contract. PCS challenges Schneider's counterclaim, alleging it did not cost anything for Schneider to replace PCS's employees and that PCS's walk-off was justified by Schneider's failure to pay under the contract terms.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

### B. PCS's Claim

Plaintiff PCS argues that this is a simple case because Schneider has approved the payment of $286,918.94 to PCS for services rendered which Schneider has not paid. Schneider does not dispute that it owes PCS at least this much for work performed under the contract. Accordingly, PCS's motion for partial summary judgment will be granted for this amount, and PCS is freed from the obligation to prove this amount of its claim at trial. I now turn to Schneider's counterclaim.

4

## C. Schneider's Counterclaim

Schneider claims that PCS breached its contract with Schneider by pulling its workers off the job without just cause. Both parties have moved for summary judgment on Schneider's counterclaim, and I will address each motion in turn.

### 1. PCS's motion

To begin, a genuine question exists about whether PCS waived strict performance by failing to demand on-time performance over the life of the contract. "A party to a contract may waive strict and full performance of any provisions made for his or her benefit. . . . Contract provisions may be waived expressly or the waiver may be inferred from the conduct of the parties." WIS JI-CIVIL 3058; *see Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183–84 (1996) ("Moreover, even where such a material breach has occurred, the non-breaching party may waive the claim of materiality through its actions."). Additionally, PCS may have assented to the late payments through the related doctrine of modification by conduct. WIS JI-CIVIL 3032. The parties agree that Schneider never made an on-time payment. Over the course of 166 invoices, payments were made anywhere from three to thirty-eight days late. PCS did not voice a complaint with this situation in writing until August 27, 2013, and only even allegedly complained by telephone slightly earlier on August 16, 2013. Whether this amounted to waiver or modification raises a genuine question of fact that it would be inappropriate for this court to decide at summary judgment. More importantly, for the reasons discussed below, even if PCS did not waive its right to payment within thirty days, there remains the question of whether PCS breached the contract by failing to allow Schneider the full five days to cure its alleged breach and instead walking off the job.

5

PCS's argument that they cannot be liable to Schneider for walking off the job because the contract was non-exclusive and Schneider had other workers is unpersuasive. The parties do not dispute that Schneider had other companies and employees working for them, doing work similar to that of PCS. Yet that fact does not mean that it would not cost Schneider anything to replace PCS's labor force once they walked off the job. PCS undertook an obligation to perform certain services for Schneider and even if those services varied in amount from time to time, PCS's failure to perform those tasks meant that Schneider had to find someone else to perform them. Therefore, Schneider reasonably claims that they had to pay a premium to compensate replacement workers.

There are genuine questions of fact relating to whether PCS was justified under its contract with Schneider in walking off the job on August 31, 2013. If PCS was not justified in doing so and Schneider incurred expenses in replacing PCS's employees, PCS may not be able to recover the full amount or any of the amount owed by Schneider under the services contract. PCS was not justified in walking off the job if they waived strict performance of the payment timing or if PCS modified the contract by their conduct. These are issues for trial and thus, PCS is not entitled to summary judgment on Schneider's counterclaim.

2. **Schneider's motion**

Schneider makes two arguments in support of its motion for partial summary judgment on its counterclaim for breach of contract. First, Schneider argues that PCS failed to provide Schneider the contractually-required notice and opportunity to cure the alleged breach. According to Schneider, PCS's failure to provide the required notice deprived Schneider of the opportunity to cure and entitles Schneider to partial summary judgment as to their counterclaim. The problem with this argument is that Schneider retained the right to cure even after PCS walked off the job, and never

6

acted on it. Additionally, when the facts are viewed in a light most favorably to the plaintiff, PCS did give Schneider the contractually required notice on August 27, 2013. The August 27 correspondence could easily be read as a notice of termination with a right to cure. At most, a genuine factual dispute exists about whether notice was given. What is not in dispute is that Schneider never made any payments owed to PCS after August 27, 2013. If Schneider had paid within the five days, there would be no dispute that PCS would have been obligated to return to the job site, but Schneider has never paid.

On the other hand, Schneider may claim that in pulling its workers off the job early PCS repudiated the contract without just cause, thereby giving rise to Schneider's claim of breach and relieving Schneider of any further obligation to perform. A repudiation or anticipatory breach of a contract requires "a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives." *Wisconsin Dairy Fresh, Inc. v. Steel & Tube Products Co.*, 20 Wis.2d 415, 427, 122 N.W.2d 361 (1963). It is a fundamental rule of contract law that where one party has repudiated the contract, the other party is excused from further performance and can maintain an action for damages. *Id.* at 426. Of course, if the other party has previously committed a substantial breach of contract before the repudiation, that party may not bring an action for damages unless he remains willing and able to render the performance due at the time of the repudiation. *Id.* "In other words, anticipatory repudiation (sometimes called anticipatory breach) is conceived of primarily as a trigger of a contract party's right of self-help, like the breach of a condition in a contract." *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 915 (7th Cir. 2001). But it is for a jury to determine whether PCS's conduct in pulling its workers off the job was a definite and unequivocal

manifestation of intention that it would not perform further and whether Schneider's failure to pay within five days of PCS's demand constitutes a material breach.

Schneider additionally argues that PCS's failure to provide the contractually-required notice of termination means that the services contract was still in force when PCS walked off the job. But the adequacy of PCS's termination of the contract does not necessarily control their duty to perform under the contract. It is possible that the services contract had not yet been "terminated" but that PCS was not obligated to perform. The Restatement describes the effect on the a party's duties after a failure to render performance by the other party: "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237; *see Mgmt. Computer Servs., Inc.*, 206 Wis. 2d at 183 ("It is well established that a material breach by one party may excuse subsequent performance by the other."). Viewed in a light most favorable to the plaintiff, Schneider's failure to make the required payments remained uncured material failures which operated as the non-occurrences of conditions of PCS's remaining duties of performance in the contract. In short, PCS could not be obligated to continue working when Schneider failed to pay for work already performed. The terms of the contract did not modify this baseline rule. PCS was required to give written notice and five days to cure prior to termination of the contract but the contract did not require PCS to continue performance in the face of nonpayment.

The issues raised by Schneider's motion for partial motion for summary judgment are thus bound up with the matters raised by PCS's motion for summary judgment. For example, if a jury finds that PCS waived the ability to demand timely payment under the contract and/or wrongfully

8

repudiated the contract despite Schneider's reasonable assurance that payment was forthcoming, Schneider may not have been in material breach for refusing to pay after PCS walked off the job on August 30, 2013. *See* Restatement (Second) Contracts § 241 (Circumstances Significant in Determining Whether a Failure Is Material). On the other hand, a jury could find that PCS was justified in failing to return when Schneider failed to pay for work already performed after PCS walked off the job.

## CONCLUSION

In sum, I conclude that there are genuine disputes as to the material facts that preclude granting summary judgment to either party on Schneider's counterclaim against PCS. Although PCS is entitled to summary judgment on its claim for damages of $286,918.94 for work already performed, any damages awarded to Schneider in the event it prevails at trial on its counterclaim would offset this amount. The court therefore will not enter judgment at this time on PCS's claim and order Schneider to pay even an undisputed amount to PCS if it is unclear whether PCS owes money to Schneider as a result of a breach of contract. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523 (1913))). Accordingly, PCS's motion for summary judgment on its claim is granted, and both parties' motions for summary judgment on Schneider's counterclaim are denied.

The Clerk of Court shall set a telephone conference in this case for further scheduling.

**SO ORDERED** this  12th  day of November, 2015.

         s/ William C. Griesbach
         William C. Griesbach, Chief Judge
         Eastern District of Wisconsin