# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PRIME CHOICE SERVICES, INC.,

      Plaintiff,

      v.                            Case No. 13-C-1435

SCHNEIDER LOGISTICS TRANSLOADING
AND DISTRIBUTION, INC.,

      Defendant.

## ORDER FOR NEW TRIAL ON DAMAGES

Following three days of evidence and presentations by the parties, the jury found that Prime Choice Services, Inc. repudiated the Services Contract with Schneider Logistics Transloading and Distribution, Inc. prior to the expiration of Schneider's right to cure its breach. The jury also found that "$0.00" would fairly compensate Schneider for PCS's breach of the Services Contract. On March 25, 2016, Schneider moved the court to direct entry of judgment as a matter of law on Defendant's damages in the amount of $853,401.49, pursuant to Rules 50(b) and 59, or, alternatively, to alter or amend the Amended Judgment through additur, or grant Defendant a new trial limited to the issue of its damages. The motion is fully briefed and ready for disposition. For the reasons stated below, the jury's damage award is vacated and Defendant's request for a new trial limited to Schneider's damages is granted.

**ANALYSIS**

**A. Rule 50**

Rule 50 of the Federal Rules of Civil Procedure empowers district courts to "order a new trial; or . . . direct the entry of judgment as a matter of law" where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)–(b). However, Rule 50(a) directs that a motion for judgment as a matter of law "may be made at any time before the case is submitted to the jury. . . . The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a). Only where this initial motion has been made may a party renew the motion pursuant to Rule 50(b). *Passananti v. Cook Cty.*, 689 F.3d 655, 660 (7th Cir. 2012) ("'Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.'") (quoting Fed. R. Civ. P. 50(b), comm. note (2006 amend.)).

Here, Schneider moved for a directed verdict before the case was submitted to the jury, but only on the issue of liability. Trial Tr. vol. 2, 385:18–20, ECF No. 87 ("And, Your Honor, then Schneider would move under Rule 50 for judgment as a matter of law as to liability."). As such, Schneider is now unable to *renew* a motion for judgment as a matter of law as to damages—the request is procedurally untimely. Therefore, Schneider's request for judgment as a matter of law on damages in the amount of $853,401.49 is denied.

**B. Rule 59(a)**

As an initial matter, federal law—not state law—provides the standard for determining when federal courts sitting in diversity should grant new trials. *McClain v. Owens-Corning Fiberglas*

2

*Corp.*, 139 F.3d 1124, 1126 (7th Cir. 1998); *see Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989). Nevertheless, federal courts sitting in diversity may look to state law for general guidance when determining whether a new trial is merited. *Mayhue v. St. Francis Hosp. of Wichita, Inc.*, 969 F.2d 919, 922 (10th Cir. 1992); *see, e.g.*, *McClain*, 139 F.3d at 1126 (looking to Illinois law for guidance on appropriate damage award in wrongful death suit).

Rule 59(a) of the Federal Rules of Civil Procedure allows a trial court to grant a motion for a new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). An inadequate jury verdict is an appropriate ground on which to order a new trial. *Taylor v. Bennett*, 323 F.2d 607, 609 (7th Cir. 1963). "'Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so.'" *Juneau Square Corp. v. First Wisconsin Nat. Bank of Milwaukee*, 624 F.2d 798, 806 n.11 (7th Cir. 1980) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2803 (3d ed.2005)). Trial courts have broad discretion to determine whether a jury verdict is inadequate and may order a new trial "if it finds the verdict against the weight of the evidence." *McClain*, 139 F.3d at 1126.

I find that the jury's verdict on damages is "against the weight of the evidence." *Id.* The jury found that Prime Choice repudiated the Services Contract with Schneider prior to the expiration of Schneider's right to cure its breach. ECF No. 74. Consistent with Wisconsin law on repudiation, the jury was instructed that: "Upon repudiation or anticipatory breach by one party, the other party may treat the contract as terminated, is excused from further performance, and may recover the damages sustained by the other's breach." Jury Instrs. at 9, ECF No. 73; *see Wisconsin*

3

*Dairy Fresh, Inc. v. Steel & Tube Products Co.*, 20 Wis. 2d 415, 426, 122 N.W.2d 361, 367 (1963).

Having decided that Prime Choice repudiated the contract, the jury needed to determine what damages were appropriate for Schneider from the time of the repudiation. In this case, that meant calculating the cost of procuring replacement workers over the lifetime of the contract and then subtracting from that amount the cost that Schneider would have had to pay to Prime Choice had the Services Contract remained in effect.

Prime Choice's strategy during trial consisted primarily of contesting liability, not damages. Prime Choice called no expert to refute Schneider's calculations and expert witness testimony. Additionally, Prime Choice called no witnesses to contest Schneider's damages calculations. Nor did Prime Choice present any independent documentary evidence challenging Schneider's calculation of damages. Similar circumstances were present in *McClain*, where the court held that a district court's decision to order a new trial on the damages was not an abuse of discretion. 139 F.3d at 1130; *see id.* at 1127 ("Owens-Corning's strategy at the first trial was to contest liability, not damages. Owens-Corning only superficially cross-examined McClain's expert witness in regard to the accuracy of the financial loss figure, and it did not call any witnesses on its own behalf to contest the figures McClain presented.").

Of course, the burden was on Schneider to prove any claimed damages. *See* Jury Instrs. at 10, ECF No. 73; *Paulsen Lumber, Inc. v. Anderson*, 91 Wis. 2d 692, 699, 283 N.W.2d 580, 583 (1979). To that end Schneider put forth documentary evidence and testimony from Schneider's Director of Operations, Jerry Critchfield, and certified public accountant John Peters, Schneider's expert. In order to rebut Schneider's testimony Prime Choice attempted to contest and discredit Schneider's damages claims through cross-examination and exhibits. For example, Prime Choice

4

elicited the following facts from Schneider's witnesses: (1) Schneider's expert never considered industry standards in his opinion; (2) Schneider had the opportunity to hire replacements at a lower rate than it ultimately did;[1] and (3) that damages could have been otherwise mitigated. Any of these arguments could have allowed a reasonable jury to conclude that Schneider's damages were lower than the $853,401.49 claimed by Schneider.[2]

Nevertheless, the weight of the evidence clearly shows that if Prime Choice repudiated the Services Contract, Schneider's damages would be greater than $0.00. The parties do not dispute that in order for Schneider to mitigate damages following Prime Choice's repudiation, Schneider needed to pay replacement workers to continue performing the work previously done by Prime Choice. Whether these workers were already on staff is immaterial—it only matters whether they were paid more than Prime Choice would have been. The evidence also clearly showed that: (1) Prime Choice was being paid a relatively low rate; (2) quality labor was hard to come by in the

___

[1]Though the Critchfield testified that Schneider considered the option of hiring lower cost case-rate vendors, those vendors had less experience and would have required more training than the more expensive hourly-rate vendors. Trial Tr. vol. 1, 172:2–23, ECF No. 86. The total cost of hiring case-rate versus hourly-rate vendors was never discussed. Additionally, the case-rate vendors would have only cost less than hourly-rate vendors; no evidence indicates that Schneider could have saved money by hiring these other case-rate vendors instead of continuing to pay Prime Choice at the rate in the Services Contract.

[2]Prime Choice also makes a number of legally fallacious arguments for why the jury could have found that Schneider was owed a lesser amount. Prime Choice argues that the jury could have found Prime Choice not liable for certain amounts because: Schneider had pulled Prime Choice off certain accounts prior to the repudiation; Prime Choice worked on additional accounts prior to the repudiation; other vendors assisted Prime Choice with their accounts; and Prime Choice was never billed for accounts taken away by Schneider. Pl.'s Br. in Opp. 3–8, ECF No. 95. These arguments misapprehend Prime Choice's responsibilities under the Services Contract and the doctrine of repudiation. Schneider's choice to reduce Prime Choice's workload for a period of time, have them work extra accounts, and not to "bill" Prime Choice for their deficiencies did not change the parties' duties under the contract or bar Schneider from now asserting its contractual rights in the face of repudiation. Prime Choice's remaining arguments rely on similar errors. *Id.*

Savannah market; and (3) Prime Choice's repudiation occurred during or just before the peak shipping season. *See* Trial Tr. vol. 2, 276:4–14, 287:24–290:5, ECF No. 87. Given these circumstances and the extensive groundwork laid by Schneider showing increased costs, *see e.g.*, Trial Tr. vol. 2, 115:13–117:14, 190:2–21, ECF No. 86, the weight of the evidence showed that Schneider had at least *some* increase in costs.

Prime Choice makes five other arguments for why the jury's assessment of zero damages was consistent with the evidence and arguments. First, Prime Choice argues that Schneider left the jury with an all or nothing choice by only requesting $853,401.49 and not also some lessor amount. Prime Choice argues that the jury was, therefore, within its power to choose nothing. *See Salazaar v. Encinias*, 242 F.3d 390 (10th Cir. 2000) ("Having made the strategic choice to present the jury with an 'all or nothing' option, plaintiff should not have been heard to complain . . . after the jury chose 'nothing.'"); *Outboard Marine Corp. v. Babcock Indus., Inc.*, 106 F.3d 182, 186 (7th Cir. 1997) (noting that defendant who only gives the jury a very small and a large estimate takes a risk that jury may choose the large estimate). But Schneider did not present the jury with this all or nothing choice—it merely gave the jury what it viewed to be the most reasonable figure. The jury was free to adjust that number as it saw fit to accommodate the issues raised by Prime Choice.

Prime Choice's remaining four arguments also fail. Prime Choice's second argument is that the jury's determination may have been based on a finding that Critchfield's testimony was incredible. But no significant evidence was presented to the jury to suggest that Critchfield was not credible and Critchfield's credibility was not critically cast in doubt. Third, Prime Choice argues that the jury may not have agreed with Schneider's damage theory. This argument is undeveloped and at odds Schneider's undisputed need to mitigate damages. Fourth, Prime Choice contends that

6

the jury may have found that Schneider experienced a technical violation of their rights without suffering damages. The very nature of a repudiation claim rebuts this argument: immediately after the repudiation Schneider had the right to sue for the full loss off damages sustained due to the breach.[3] Fifth, Prime Choice argues that the verdict may have been intended to be a finding for Prime Choice. If that is what the jury intended, the verdict was contrary to the instructions, *United States v. Phillips*, 640 F.2d 87, 91 (7th Cir. 1981) (noting that courts must assume that the jury follows clear instructions), and an impermissible compromise verdict. *Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 190 Wis. 2d 650, 675 n.34 (1995) (noting that a "compromise verdict between liability and recovery cannot stand").

**C. Partial Trial**

Having determined that the weight of the evidence supports the need for a new trial, I must decide whether the new trial will be limited to the issue of damages. Whether to grant a new trial only on the issue of damages is a question of federal law. *McClain*, 139 F.3d at 1128. The practice of permitting a partial new trial should not be allowed unless "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). "If, however, the 'question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty,' then a trial on only one issue is tantamount to a denial of a fair trial." *McClain*, 139 F.3d at 1128 (quoting *Gasoline Products*, 283 U.S. at 500).

---

[3]Though this argument is undeveloped it also appears to be circular, amounting to a claim that: "the jury considered the breach 'technical' (i.e. without damages) therefore Schneider had no damages."

This case presents divisible liability and damages issues and is, therefore, suitable to a partial trial on damages. The elements of liability and damages here are distinct, as are the timeframes that concern the two issues. Liability concerned mainly the parties' performances under the contract and primarily the final days of the life of the contract (before the cure period ended). In contrast, the damages issue concerned the costs that Schneider paid in the months after the repudiation of the contract. Though Critchfield did testify extensively on both the liability and damages issues during the trial, his discussion of the damages could be readily separated from his testimony concerning Prime Choice's liability. Therefore, this Court can properly grant a new trial limited to the issue of damages.

**D. Additur**

Schneider requests that this Court alter or amend the Amended Judgment (ECF No. 77) through additur and Rule 59(e) of the Federal Rules of Civil Procedure. "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Similarly, pursuant to Wisconsin law "[a] party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice." Wis. Stat. § 805.15(1). As Schneider has been unable to prove any manifest error of law or fact and has presented no new evidence, altering or amending the Amended Judgment would be inappropriate in this case.

Schneider further requests that this Court order a new trial unless Prime Choice elects to accept judgment in the amount of $853,401.49. Pursuant to Wis. Stat. § 805.15(6):

8

> If a trial court determines that a verdict is excessive or inadequate, not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount.

Schneider asks that the court apply § 805.15(6) to the case at hand, find that damages of $853,401.49 are reasonable as a matter of law, and order a new trial on damages unless Prime Choice accepts this amount. Generally speaking, a federal court may not increase a jury's damages determination by additur. *Dimick v. Schiedt*, 293 U.S. 474, 486–87 (1935); *Davis v. United States*, 716 F.2d 418, 430 (7th Cir. 1983) ("[T]he Seventh Amendment forbids additurs in federal trials unless the plaintiff consents."). Citing *Dimick* and *Davis*, Prime Choice argues that federal courts do not have the authority to engage in the process of additur. *See* Wright, Miller & Kane, *supra*, § 2807 ("If the verdict is too low, [a federal trial court] may not provide for an additur as an alternative to a new trial."). A fundamental premise of Schneider's argument for additur is that this Court is sitting in diversity jurisdiction and adopts state substantive provisions such as additur. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Prime Choice challenges that notion, contending that Wis. Stat. § 805.15(6) is a procedural, rather than substantive, in nature. Because I find that a new trial is merited pursuant to Fed. R. Civ. P. 50(a), I will not venture into the question of whether additur is appropriate in this case.

## CONCLUSION

**THEREFORE IT IS ORDERED** that the amended judgment is vacated and a new trial is granted on the issue of damages. The Clerk is directed to place this matter on the Court's calendar for a telephone conference to discuss further scheduling.

9

Dated this __6th__ day of June, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
Eastern District of Wisconsin
